2008 UT 43

**CITIZENS FOR RESPONSIBLE TRANSPORTATION, Plaintiff and Appellant,**

v.

**DRAPER CITY, a municipal corporation, Defendant and Appellee.**

**Utah Transit Authority, Intervenor.**

**No. 20070677.**

Supreme Court of Utah.

July 11, 2008.

---

Justin D. Heideman, Daniel W. McKay, Justin R. Elswick, Provo, for plaintiff.

Douglas J. Ahlstrom, Benjamin C. Rasmussen, Draper, for defendant.

W. Cullen Battle, Bruce T. Jones, Jennifer R. Kohler, Timothy K. Clark, Salt Lake City, for intervenor.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 In this case, Citizens for Responsible Transportation (CRT) appeals from an order of the district court denying CRT's motion for summary judgment and granting Draper City's motion to dismiss. The district court dismissed CRT's claim on the basis that Draper City Resolution No. 06–71 was not subject to referendum. CRT asks that we reverse the dismissal and remand the claim to the district court. We affirm.

## BACKGROUND

¶ 2 In 2004, five counties and thirty-five cities entered into an agreement with UTA entitled Master Interlocal Agreement Regarding Fixed Guideway Systems (Interlocal Agreement). The Interlocal Agreement grants UTA the "right to plan, design, construct, own, operate and maintain" a commuter rail system along a specifically identified corridor without obtaining permits or paying administrative fees to the city. Additionally, the Interlocal Agreement exempts UTA from city zoning and planning regula-

tions with a few exceptions.[1] The corridor designated by the agreement for the commuter rail system is land that UTA owns or in which it has an interest. On February 3, 2004, pursuant to the Interlocal Cooperation Act (ICA), under Utah Code section 11–13–101 to –314 (2007), Draper City Council passed Resolution No. 04–12, which adopted and approved the Interlocal Agreement. The ICA provides that any agreement made under the authority of the ICA is not subject to referendum. *See* Utah Code Ann. § 11–13–219(2).

¶3 On November 14, 2006, the Draper City Council passed Resolution No. 06–71, endorsing the same corridor designated in the Interlocal Agreement as the "Locally Preferred Alternative" for the proposed commuter rail system. Following Draper City's adoption of Resolution No. 06–71, CRT filed an application for referendum proceedings with the Draper City Recorder requesting Resolution No. 06–71 be placed on the public ballot. CRT's application was accepted, and petition and signature sheets were issued pursuant to statutory procedure. The Salt Lake County clerk's office reviewed the signatures contained in the petition, and invalidated a number of them. When the petition was subsequently submitted to the Draper City Recorder, it was rejected because the number of remaining signatures was insufficient to place it on the ballot.

¶4 Later, following a recount of the signatures, the Draper City Recorder again denied CRT's petition. On February 5, 2007, CRT initiated a declaratory judgment action in district court to compel the Draper City Recorder to accept certain signatures which had been declared invalid and to place Resolution No. 06–71 on the public ballot. The next day, CRT filed a motion for a temporary restraining order against Draper City and requested that the court enjoin Draper City from beginning construction on the TRAX commuter rail system. The district court denied CRT's motion for a temporary restraining order and request for a preliminary injunction on February 20, 2007. On March 13, 2007, CRT filed a second motion for a temporary restraining order and a preliminary injunction against Draper City and requested a hearing before the district court.

¶5 On April 4, 2007, the district court heard arguments, and on April 23, 2007, it issued an order denying CRT's motion for a temporary restraining order and preliminary injunction. The district court held that Resolution No. 06–71 was an administrative action that did not create law and therefore was not subject to referendum. Additionally, the district court found that Resolution No. 06–71 was not subject to referendum pursuant to the ICA.

¶6 On May 31, 2007, Draper City filed a motion to dismiss based on the district court's April 23, 2007 order. On July 18, 2007, the district court granted Draper City's motion to dismiss based on the April 23 order, which contained two grounds for dismissal. First, the district court found that Resolution No. 06–71 was not subject to referendum because it was merely Draper City Council's expression of a preference and did not have the force of law. Second, the district court found that Resolution No. 06–71 was enacted pursuant to the ICA and was not, therefore, subject to referendum. CRT now appeals the district court's grant of dismissal. We affirm the district court's ruling on the basis that Resolution No. 06–71 is not law and therefore not subject to referendum.

¶7 We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARD OF REVIEW

¶8 The district court's decision to grant a motion to dismiss presents a question

---

1. The Interlocal Agreement grants UTA the "right to plan, design, construct, own, operate, and maintain" the commuter rail system without being subject to city zoning, planning, and regulatory authority "to the extent that (A) such UTA activities are governed by federal or State laws, rule or regulations, (B) the exercise of such authority by one or more communities would materially adversely affect the uniform operation of the System, (C) the exercise of such authority by one or more Communities would impose a cost on UTA which constitutes a Betterment under the terms of this Agreement, or (D) the exercise of such authority by one or more communities would be inconsistent with the terms of this Agreement." None of these limitations apply to this case, and none of them required Draper City to pass Resolution No. 06–71.

of law that we review for correctness. *See Ellis v. Estate of Ellis*, 2007 UT 77, ¶ 6, 169 P.3d 441. Additionally, the district court's determination that Resolution No. 06–71 is not subject to referendum is a legal conclusion to which we give no particular deference and which we review for correctness. *See Grayson Roper Ltd. P'ship v. Finlinson*, 782 P.2d 467, 470 (Utah 1989).

## ANALYSIS

### I. RESOLUTION NO. 06–71 IS NOT A LAW AND IS NOT REFERABLE

 ¶ 9 CRT argues that the district court erroneously determined that Resolution No. 06–71 did not have the force of law and therefore erred in granting the motion to dismiss. We disagree. Article VI of the Utah Constitution vests the sovereign legislative power in both (1) the State Legislature and (2) the people of the State of Utah. Utah Const. art. VI, § 1(1); *see also Low v. City of Monticello*, 2002 UT 90, ¶ 23, 54 P.3d 1153. The power of the people to legislate can be exercised at the local and state level through initiatives and referenda. *See* Utah Const. art. VI, § 1(2); Utah Code Ann. § 20A–7–102 (2007); *Low*, 2002 UT 90, ¶ 23, 54 P.3d 1153. Therefore, citizens of the State of Utah may refer acts by the Legislature, and citizens of a city or county may refer legislative acts by their city council or county commission. If a petition for referendum is properly presented to public officials, those officials are required by law to present the issue to the public for a vote. *See* Utah Code Ann. §§ 20A–7–607 to –608; *Low*, 2002 UT 90, ¶ 23, 54 P.3d 1153. A petition, however, may be rejected if it is directed at a matter that is not subject to referendum. *Low*, 2002 UT 90, ¶ 23, 54 P.3d 1153; *Salt Lake on Track v. Salt Lake City*, 939 P.2d 680, 682 (Utah 1997).

¶ 10 The Utah Constitution grants the people power to refer "any law or ordinance passed by the law making body." Utah Const. art. VI, § 1(2)(b)(ii). The "law making body" of a city, however, often performs administrative and executive responsibilities

in addition to its legislative functions. *See Keigley v. Bench*, 97 Utah 69, 89 P.2d 480, 483 (1939) (stating that the legislature contemplated that a governing body of a city has administrative as well as legislative functions, and they intended to limit referendum proceedings to legislative acts). We have repeatedly held that legislative actions of the law making body are referable, while administrative actions are not. *See Low*, 2002 UT 90, ¶ 24, 54 P.3d 1153; *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117, 1122 (Utah 1994); *Keigley*, 89 P.2d at 483. If Resolution No. 06–71 is legislative in nature, then it is subject to referendum; if it is an administrative action, then it is not referable.

 ¶ 11 The determinative test in deciding whether an action is legislative or administrative in nature is whether it creates new law on the one hand, or merely executes or implements existing law on the other. *Low*, 2002 UT 90, ¶ 24, 54 P.3d 1153; *Keigley*, 89 P.2d at 484. In determining whether an action creates new law or implements or executes existing law we look at the general purpose and policy of the original law, the material variance between the new provisions and the original law, and the general appropriateness of voter participation. *See Citizen's Awareness Now*, 873 P.2d at 1122–23. In *Citizen's Awareness Now*, this court, in reviewing city actions related to zoning, said:

> If the zoning change falls within the general purpose and policy of the original ordinance, it constitutes an administrative change and is not subject to referendum. However, if the zoning change does not comport with the general purpose and policy of the original ordinance, a legislative presumption attaches and the trial court must then consider the final two elements, material variance and appropriateness of voter participation.

873 P.2d at 1124.

 ¶ 12 CRT contends that all resolutions are legislative actions and therefore subject to referendum because the statutory definition for referable "local law[s]" includes "resolution[s]." [2] Utah Code Ann. § 20A–7–

---

**2.** CRT seems to contradict its own argument that Resolution No. 06–71 is a law and therefore

subject to referendum by also arguing in its brief

101(10)(a). The title of an action, however, is not dispositive; rather, what an action accomplishes determines if it is legislative or administrative in nature. *See Low,* 2002 UT 90, ¶ 24, 54 P.3d 1153. If we look only at the formal label a city council assigns to a particular action, then a city council could avoid the referral process merely by carefully selecting that label, regardless of a measure's actual import.

· ¶ 13 On its face, Resolution No. 06–71 has no effect beyond expressing Draper City's preference for a particular rail location and therefore does not constitute a law or ordinance. The city's preference has no legal effect and is not enforceable. The authority for UTA to construct a commuter rail system on the corridor designated by Resolution No. 06–71 is clearly within the intended purpose and policy of the Interlocal Agreement. The Interlocal Agreement and Resolution No. 04–12 already grant UTA "the right to plan, design, construct, own, operate and maintain" a commuter rail system in the same location that Resolution No. 06–71 later declared the "Locally Preferred Alternative." The Interlocal Agreement specifically states that UTA is not required to obtain a permit, pay any administrative fees, and is not subject to "planning, zoning, and regulatory authority" under Draper City's police power. Absent Resolution No. 06–71, UTA would still have the authority to move forward with the construction of the commuter rail system.[3] Therefore, we hold that Resolution No. 06–71 does not have the force of law. Rather, it is merely Draper City's declaration of support for the proposed location for the commuter rail system and, as such, is not subject to referendum.

¶ 14 Citizens who are unhappy with the execution or implementation of laws are not without recourse, but their remedies lie in the political arena. If every dissatisfied citizen were allowed to invoke the referendum process for administrative actions, the " 'efficiency and economy in the business administration of a city would be seriously affected.' " *Keigley,* 89 P.2d at 483 (quoting *Dooling v. City Council of Fitchburg,* 242 Mass. 599, 136 N.E. 616, 617 (1922)). Citizens' recourse is the opportunity to vote their executive officials out of office. *See Ricker v. Bd. of Educ.,* 16 Utah 2d 106, 396 P.2d 416, 420 (1964) (holding that although citizens may not directly intrude into school board administration, their remedy is the "power of the future ballot").

## II. INTERLOCAL COOPERATION ACT

■ ¶ 15 CRT also argues that Resolution No. 06–71 does not fall under the ICA and that the ICA is unconstitutional, and therefore the district court erred in determining that the ICA excluded Resolution No. 06–71 from the referral process. Having determined that Resolution No. 06–71 is not law and therefore not subject to referendum, we need not determine whether it falls under the ICA. Additionally, we decline to address the constitutionality of the ICA because " 'this court should avoid addressing constitutional issues unless required to do so.' " *State ex rel. Z.C.,* 2007 UT 54, ¶ 5, 165 P.3d 1206 (quoting *Lyon v. Burton,* 2000 UT 19, ¶ 10, 5 P.3d 616).

## CONCLUSION

■ ¶ 16 In conclusion, a citizen's right to refer government action to a public vote is available for legislative actions but not for administrative actions. The determinative test of whether an action is administrative or legislative is whether it creates new law or whether it is an implementation or execution of existing law. The Interlocal Agreement and Resolution No. 04–12 gave UTA the authority to construct a commuter rail system in the same location that Resolution No. 06–71 declared the "Locally Preferred Alternative" for the rail system. Therefore, we hold that Resolution No. 06–71 did not have

that Resolution No. 06–71 does not fall under the ICA because it is not a law.

**3.** Resolution No. 06–71 merely expresses a preference pursuant to the general purpose and policy of the Interlocal Agreement. As such, it is administrative in nature. In *Keigley* we held that

even when a city council makes changes to a law, those changes could still be considered administrative if made "pursuant to the intended purpose and policy" of the original law. 89 P.2d at 484.

the force of law but was merely Draper City's declaration of a "Locally Preferred Alternative" for the commuter rail system. As an administrative action, Resolution No. 06–71 is not subject to referendum. Affirmed.

¶ 17 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Judge THORNE concur in Chief Justice DURHAM's opinion.

¶ 18 Justice NEHRING does not participate herein; Court of Appeals Judge WILLIAM A. THORNE, JR., sat.