THE STATE EX REL. CITY OF UPPER ARLINGTON ET AL.
*v.* FRANKLIN COUNTY BOARD OF ELECTIONS ET AL.

## [Cite as *State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections,* 119 Ohio St.3d 478, 2008-Ohio-5093.]

(No. 2008–1804—Submitted September 29, 2008—Decided October 2, 2008.)

---

**Per Curiam.**

{¶ 1} This is an expedited election action for a writ of prohibition to prevent the board of elections from placing an ordinance proposed by an initiative petition on the November 4, 2008 election ballot.   In the alternative, relators initially requested a writ of mandamus to compel the board of elections to decide a protest against the petition filed by two of the three relators, but upon the board's subsequent denial of the protest, they agree that their mandamus claim is now moot.   Because the enactment sought to be repealed by the proposed ordinance constituted an administrative action and is thus not the proper subject of initiative or referendum, we grant the writ of prohibition.

## Council Ordinances

{¶ 2} On December 10, 2007, the city council of relator city of Upper Arlington adopted Ordinance No. 106–2007, the annual appropriation ordinance, which included an appropriation for solid-waste management. On that same day, the city council adopted Ordinance No. 124–2007, which authorized the city manager to enter into a contract with Inland Service Corporation for solid-waste collection and processing services.

{¶ 3} Four days later, on December 14, the city council adopted Ordinance No. 126–2007, which repealed Ordinance No. 124–2007 and again authorized the city manager to enter into a solid-waste services contract with Inland Service Corporation, but this time declaring an emergency.

{¶ 4} On January 28, 2008, intervening respondent, Michael A. Schadek, a city elector, filed with the city finance director under R.C. 731.32 a precirculation copy of an initiative petition proposing an ordinance to repeal Ordinance No. 126–2007. On that same day, the city council adopted Ordinance No. 7–2008, which, inter alia, provides for an annual service fee to be paid for trash-collection services.

## Contract for Solid–Waste Services

{¶ 5} On January 31, Upper Arlington City Manager Virginia L. Barney executed a contract for solid-waste services with Inland Service Corporation to begin on April 7. The agreement provided, "The City Manager is duly authorized to execute this Agreement pursuant to Ordinance No. 126–2007 and the subsequent repeal of said ordinance, by legislative action or by the initiative or referendum process, shall not result in the termination or cancellation of this Agreement."

## Initiative Petition

{¶ 6} On July 25, 2008, Schadek filed with the city finance director a signed initiative petition proposing an ordinance to repeal Ordinance No. 126–2007. The text of the proposed ordinance provides:

{¶ 7} "Section I. That the residents of Upper Arlington do not desire the 'privatization' of trash services and want to continue Upper Arlington's 'pay as you throw approach' requiring solid waster stickers for refuse collection and not for recycling with garage-side pickup at their homes by the City's own employees with no annual fee for trash collection.

{¶ 8} "Section II. That the residents of Upper Arlington don't want the City's Administration to enter into any such contract authorized under Upper Arlington Ordinance No. 126–2007 with Inland Service Corporation for solid waste collection and processing services or any other third party contractor prior to a vote on this initiative at the next general election; but in the event that the City chooses

to ignore this initiative process and enter into a contract with Inland Service Corporation such resolution and/or ordinance shall be and hereby is repealed and the City shall pay for and be responsible for contract damages to Inland Service Corporation.

{¶ 9} "Section III. That the ordinance shall take effect and be in force from and after the earliest date allowed by law."

{¶ 10} The petition did not designate any petitioners as a committee to be regarded as filing the petition. The city finance director transmitted the petition to respondent, Franklin County Board of Elections, which determined on August 14 that the petition contained 1,716 valid signatures. On August 21, the finance director certified the petition to the board of elections, expressly reserving the right to challenge the validity of the petition.

## Protest and Board of Elections Hearing on Protest

{¶ 11} On August 29, 2008, relators city of Upper Arlington and Margaret Concilla, a resident elector of the city, filed a protest against the initiative petition, specifying 14 different grounds. On September 8, 2008, the board of elections conducted a hearing on the protest, but declined to decide the protest, which had the effect of denying the protest and permitting the proposed ordinance to appear on the November 4 election ballot. At the hearing, the board considered the arguments of both the protesters and Schadek, and the protesters submitted exhibits, including the affidavit of the city manager.

## Expedited Election Case

{¶ 12} On September 11, relators, Upper Arlington, Concilla, and David A. Varda, another resident-elector of the city, filed this expedited election action for a writ of prohibition to prevent the board of elections from placing the proposed ordinance on the November 4 general election ballot. In the alternative, relators requested a writ of mandamus ordering the board of elections to decide the protest. We granted Schadek's motion to intervene as an additional respondent. On September 12, the board voted to deny the protest, thereby rendering relators' mandamus claim moot.

{¶ 13} The parties filed evidence and briefs pursuant to the accelerated schedule in S.Ct.Prac.R. X(9). The Ohio Municipal League filed an amicus curiae brief in support of relators, and various Upper Arlington residents filed an amicus curiae brief in support of respondents.

{¶ 14} This cause is now before the court for our consideration of the merits.

## Prohibition

{¶ 15} Relators request a writ of prohibition to prevent the board of elections from placing the ordinance proposed by the initiative petition on the November 4,

2008 general election ballot. To be entitled to the writ, relators must establish that (1) the board of elections is about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no adequate remedy exists in the ordinary course of law. *State ex rel. Stoll v. Logan Cty. Bd. of Elections,* 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 28.

{¶ 16} Relators have established the first requirement for the writ. Notwithstanding the intervening respondent's argument to the contrary, the board of elections exercised quasi-judicial authority by effectively denying the protest after conducting a hearing that included sworn testimony. *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections,* 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 17. The protesters submitted the sworn testimony of the city manager by affidavit at the protest hearing. In addition, the manager of the board's elections operations testified at the hearing, albeit without being sworn. "Quasi-judicial authority is the power to hear and determine controversies between the public and individuals that *require* a hearing resembling a judicial trial." (Emphasis added.) *State ex rel. Wright v. Ohio Bur. of Motor Vehicles* (1999), 87 Ohio St.3d 184, 186, 718 N.E.2d 908. Here, R.C. 3501.39(A)(2) required that the board of elections conduct a quasi-judicial hearing on relators' protest. Cf. *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 238, 242, 736 N.E.2d 893 (prohibition not available when no statute or other law required that the board of elections conduct a hearing resembling a quasi-judicial hearing on protest).

{¶ 17} Relators also established the third requirement for the writ because they lack an adequate remedy in the ordinary course of law due to the proximity of the election. *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 28.

{¶ 18} For the remaining requirement, the exercise of unauthorized power, "we must determine whether the board acted fraudulently or corruptly, abused its discretion, or clearly disregarded applicable law." *State ex rel. Brown v. Butler Cty. Bd. of Elections,* 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 23. There is no evidence of fraud or corruption here, so relators must establish that the board of elections abused its discretion or clearly disregarded applicable law by denying their protest and certifying the ordinance proposed by the initiative to the election ballot. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

### Legislative or Administrative Act

{¶ 19} Section 1f, Article II of the Ohio Constitution authorizes initiative and referendum power only on those questions that municipalities "may now or

hereafter be authorized by law to control by *legislative* action." (Emphasis added.) "The electors of a municipality may by the initiative enact a measure conflicting with or repealing legislation previously passed by the municipal council, so long as the subject of such initiative ordinance is within the powers of the municipality to control by legislative procedure." *State ex rel. Sharpe v. Hitt* (1951), 155 Ohio St. 529, 44 O.O. 489, 99 N.E.2d 659, paragraph three of the syllabus.

{¶ 20} "Conversely, '[p]ursuant to Section 1f, Article II of the Ohio Constitution, actions taken by a municipal legislative body, whether by ordinance, resolution, or other means, that constitute *administrative* action, are not subject to [initiative or] referendum proceedings.' (Emphasis added.)" *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, ¶ 22, quoting *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 697 N.E.2d 181, paragraph two of the syllabus (bracketed material from *Oberlin Citizens*); see also Section III, Upper Arlington Charter ("Administrative ordinances, resolutions or decisions shall be subject to redress through the judicial system").

{¶ 21} "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus.

{¶ 22} In applying this test to the applicable ordinance—Ordinance No. 126–2007—that the initiative petitioners seek to repeal by their proposed ordinance, we conclude that Ordinance No. 126–2007 merely executes and administers laws already in existence instead of enacting a new law. Ordinance No. 126–2007 authorized the city manager to enter into a contract with Inland Service Corporation to provide the city's solid waste services. But the ordinance was unnecessary because the applicable city ordinances already conferred authority on the city manager to enter into the contract.

{¶ 23} Under Upper Arlington Codified Ordinance 138.09(c), the city manager "may enter into contracts for the items set forth in C.O. § 138.06(B)(1) without prior City Council approval, provided that sufficient funds have already been appropriated." One of the contractual subjects set forth in Section 138.06(B)(1) for which contracts may be awarded without a formal competitive bid or procurement process include contracts for solid-waste disposal. And pursuant to Ordinance No. 106–2007, sufficient funds for solid waste disposal had already been appropriated.

{¶ 24} " '[A]n act or resolution which merely carries out the policy or purpose already declared by the legislative body' " is an administrative action that is not

subject to initiative. *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections,* 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 44, quoting 5 McQuillin, The Law of Municipal Corporations (3d Rev.Ed. 2004) 411, Section 16:54. The Upper Arlington City Council had previously expressed in its existing codified ordinances that as long as sufficient funds have already been appropriated, the city manager is authorized—without additional legislative approval—to enter into a contract on behalf of the city for solid-waste disposal. Therefore, the city council's subsequent enactment of Ordinance No. 126–2007 did not confer any greater authority in this regard on the city manager than she already had. That is, the mere fact that the city council enacted Ordinance No. 126–2007 did not change what was already an administrative action under the applicable ordinances into a legislative one. Nothing in the Upper Arlington Codified Ordinances authorizes legislative action to veto the city manager's authority under the existing laws.

{¶ 25} Therefore, because Ordinance No. 126–2007 merely reiterated what had already been authorized by existing laws, "its enactment constitutes an administrative action, which is not properly the subject of either referendum or initiative seeking its repeal." *Oberlin Citizens,* 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, at ¶ 31; see also *Jack Gray Transport, Inc. v. Ervin* (1992), 113 Or.App. 742, 833 P.2d 1349 (government service district's award of contract for hauling solid waste was an administrative action, not a legislative action, and thus was not subject to referendum); *Solon Sanitary Landfill, Inc. v. Linton* (July 3, 1980), Cuyahoga App. No. 41507, 1980 WL 355084 (city council resolution authorizing and directing mayor and finance director to enter into management agreement with landfill company held to be administrative action not subject to referendum because council was acting pursuant to existing ordinances concerning the use and operation of sanitary landfills).

{¶ 26} Moreover, insofar as the proposed ordinance included precatory language without legal effect that appeared to express the public opinion of the city's electors—that the city residents "do not desire" privatization of trash-collection services, "want" to continue the preexisting trash-collection method, and "don't want" the city to enter into a contract with Inland Service Corporation—its enactment would also not constitute a proper legislative action. See *State ex rel. N. Main St. Coalition v. Webb,* 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 35, citing *State ex rel. Rhodes v. Lake Cty. Bd. of Elections* (1967), 12 Ohio St.2d 4, 41 O.O.2d 2, 230 N.E.2d 347, and *State ex rel. Bevington v. Summit Cty. Bd. of Elections* (May 2, 1979), Summit App. No. 9087, 1979 WL 207624; see, e.g., *State ex rel. Gateway Green Alliance v. Welch* (Mo.App.2000), 23 S.W.3d 861, 864 (proposed ordinance that merely constituted a "public opinion poll" of the city's electorate on an issue was administrative rather than legislative in character and was thus an inappropriate subject for initiative).

{¶ 27} The board of elections thus abused its discretion and clearly disregarded applicable law by denying relators' protest and placing the ordinance proposed by the initiative petition on the November 4 election ballot.

## Other Claims

{¶ 28} Relators also claim that they are entitled to the requested writ of prohibition because the initiative petition does not contain the required number of signatures of electors and fails to designate a committee. Because these additional claims are rendered moot by our decision, we need not address them. See *State ex rel. Barletta v. Fersch*, 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 22 ("we will not issue advisory opinions, and this rule applies equally to election cases").

## Conclusion

{¶ 29} Relators have established their entitlement to the requested extraordinary relief. The board of elections abused its discretion and clearly disregarded applicable law in denying the protest and placing the initiative on the general election ballot, and relators lack an adequate remedy in the ordinary course of law. Therefore, we grant a writ of prohibition to prevent the board of elections from placing the initiative on the November 4, 2008 general election ballot.

Writ granted.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., not participating.

———

Jeanine A. Hummer and Thomas A. Lindsey; and The McTigue Law Group, Donald J. McTigue, and Mark A. McGinnis, for relator city of Upper Arlington.

The McTigue Law Group, Donald J. McTigue, and Mark A. McGinnis, for relators Margaret Concilla and David A. Varda.

Ron O'Brien, Franklin County Prosecuting Attorney, and Patrick J. Piccininni and Anthony E. Palmer Jr., Assistant Prosecuting Attorneys, for respondent Franklin County Board of Elections.

James C. Becker, for intervening respondent Michael A. Schadek.

Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, Rebecca K. Schaltenbrand, and Stephen J. Smith; and John Gotherman, urging granting of the writ for amicus curiae Ohio Municipal League.

Harris & Mazza and Robert H. Willard, urging denial of the writ for amici curiae Germaine Hirsch, William D. Kloss Sr., Robert H. Maynard, Daniel McCormick, Melanie F. Myers, John E. Ross, and Beverlee A. Tague.