ORDER DISMISSING AMENDED COMPLAINT
B.J. JONES, Deputy Judge.
ACTION
The Plaintiffs—Elizabeth Sherman, Sandra Nichols, Vikki Howard, and Harry *463 Greene—filed a civil petition with this Court seeking a permanent injunction against Defendant, Enbridge Energy, LLC (Enbridge), from constructing the proposed “Alberta Clipper Pipeline and Southern Diluents Pipelines” across and within the boundaries of the Leech Lake Reservation, The Plaintiffs filed for a temporary restraining seeking to enjoin all construction efforts on the pipeline pending resolution of this lawsuit. Hearing was held on the 14th day of August 2009 on the TRO with the Plaintiffs appearing to represent themselves and the Defendant appearing through Randy Thompson, Attorney at Law. At hearing the Court permitted argument from both sides and also took testimony from Petitioner Sherman.
On August 19, 2009 this Court denied the temporary restraining order finding that the Plaintiffs had failed to make a sufficient showing of an immediate and irreparable harm. In that ruling the Court noted that the project had yet to be approved by the United States Secretary of State, which is required because the pipeline traverses an international boundary, and the rights-of-way over the trust and allotted lands on Leech Lake had not been approved by the Department of Interior. This Court also questioned its jurisdiction to hear a dispute regarding the underlying merits of the pipeline project itself, not because of any limits over non-Indian Defendants imposed by the United States Supreme Court[1], but because of a lack of underlying substantive federal or tribal law that would persuade this Court that this dispute is anything other than a political one between Band members and the Band Assembly over the wisdom of permitting the pipeline to run through the reservation.[2] Courts apply the law and do not have the right to intervene in disputes based upon political differences of opinion.
This Court did, however, uphold the standing of the Plaintiffs to assert claims against the Defendant based upon one concrete theory proffered by the Plaintiffs: Can Band members petition the RBC to overturn a contract entered into by the RBC and a private party pursuant to the right of Band members under Article XIV, Section 2 of the Minnesota Chippewa Tribe’s revised Constitution to petition their government for redress should the government take action they disapprove of. This Court did not address the merits of that issue at its first hearing, nor did it *464 hold that the Plaintiffs had stated a claim upon which relief could be granted on that issue, because the RBC had not acted on the petition at that time.
Since the Court’s first order the Secretary of State granted the Defendant the license for the project, causing the Plaintiffs to file a second motion for a temporary restraining order. In addition the Leech Lake Reservation Business Council (hereinafter RBC) rejected the petition for a referendum election on the pipeline agreement for alleged irregularities under Article XIV, Section 2 of the MCT Constitution. That rejection, dated September 18, 2009, was apparently based upon 15 alleged irregularities related to unverified or improper signatures on the petition, and not because the issue sought to be controverted by referendum was not a proper one under the MCT Constitution. This is telling because the Defendants contend that the right of referendum would not extend to overturning RBC approval of a private contract with another party such as the Defendant. There is nothing in the RBC’s decision to reject the petition that indicates that the RBC shares this opinion.[3]
After this flurry of activity the Plaintiffs filed a third motion for a preliminary injunction, request for expedited hearing, and a motion to amend their complaint to add the Reservation Business Council and the Minnesota Chippewa Tribe, through its Chief Executive officer, as Parties Defendant. The Plaintiffs wish to challenge the RBC’s refusal to accept their referendum petition seeking to overturn the RBC decision to permit the pipeline to run through the Leech Lake reservation. Defendant Enbridge opposed both the second and third motion for preliminary injunction and the motion to amend the complaint. It contended that no claims over which this Court has jurisdiction remained and therefore the lawsuit should be dismissed. It moved this Court to dismiss the lawsuit on October 1, 2009.
On October 19, 2009 this Court denied the Plaintiffs’ second and third petitions for preliminary injunctive relief but granted leave to them to file an amended complaint adding the Leech Lake Reservation Business Council as Party Defendants. The Court also denied the motion of En-bridge to dismiss it from this suit, finding that the Court’s ultimate disposition of the referendum issues could impair its rights and that a resolution of that issue could not be resolved without the presence of Enbridge as a Defendant. After some delay the Plaintiffs did finally file and serve an appropriate amended complaint upon the Leech Lake RBC and the Minnesota Chippewa Tribe.
All of the current Defendants have moved this Court to dismiss the amended complaint for a variety of issues, only one of which will be discussed by the Court because it ultimately disposes of this case. This Court concludes that the right of Leech Lake Band members to petition their government under Article XIV, Section 2 of the Minnesota Chippewa Tribe’s revised Constitution does not extend to administrative decisions of the Reservation Business Committee and therefore the Plaintiffs have failed to state a claim upon which relief can be granted in this ease.
LEGAL ANALYSIS
The Minnesota Chippewa Tribe’s Constitution preserves to the Band members of each constituent Band the right to *465 petition the Reservation Business Committee for a referendum election on any enacted or proposed resolution or ordinance of the Reservation Business Committee. MCT Constitution, Article XIV, Section 2. On its face this right is very broad and would apply to actions both taken and contemplated by the RBC by resolution or ordinance. This right of the members of the Bands must be reconciled, however, with the rights of the Reservation Business Committee to administer a government for the Band members. Article VI, Section 1(c) of the MCT Constitution expressly authorizes the RBC to enter into contracts with private parties on all matters within the powers of the RBC. It is clear to this Court that the agreement entered into between Enbridge and the RBC, which forms the gravamen of the legal dispute in this case, was a lawful exercise of governmental power by the RBC under Article IV, Section 1(c) of the MCT Constitution.
The type of power being exercised when the RBC entered into the contract must be analyzed to resolve this legal action. Many tribal governments are unique in that they exercise both executive and legislative powers. Unlike most federal and state governments that maintain three branches of government—executive, legislative and judicial—the MCT Constitution only expressly creates one branch of government—a Reservation Business Committee. Although the MCT Constitution also creates the Tribal Executive Committee of the MCT, the Constitution does not seem to vest that entity with day-to-day governing authority over each constituent Band, but only with the authority to legislate on matters impacting all the Bands. Because the MCT Constitution vests all power in the RBC, the individual RBC’s, unless modified by each Band as a matter of law [4] exercise both legislative and executive functions.
When the RBC enacts ordinances it acts in a legislative capacity whereas when it enters into contracts and enacts resolutions and motions it engages in an executive or administrative capacity. The MCT and RBC Defendants have filed with this Court a recent MCT Constitution Interpretation No. 11-09 that attempts to interpret Article XIV of the Revised MCT Constitution to draw a distinction between legislative and executive actions with regard to the right of the members of a constituent Band to petition for a referendum. The Interpretation states that the right of referendum only extends to actions taken by the RBC wearing its legislative hat and not when wearing its administrative hat. The Plaintiffs argue that this interpretation was made after they filed their lawsuit and should not carry any weight in this case. An interpretation of the Constitution made while a case is pending does not raise ex post facto issues as an interpretation does not carry the weight of law, but merely offers an interpretation of existing law. The Court will therefore consider the import of the Interpretation.
Although interpretations of the MCT regarding its own constitution are entitled to weight, they cannot substitute for a fair and measured judicial interpretation of the Constitution, especially in a case when the MCT itself is a Defendant in this case. The Interpretation states that actions of the RBC that are administrative in nature are not subject to the right of referendum set forth in the MCT Constitution. Only legislative actions, according to the interpretation, are subject to referendum elections. *466 This interpretation seems consistent with how most Courts have interpreted the right of referendum elections. The LLBO cite to a Cherokee Nation Supreme Court decision, Cornsilk v. Byrd, 6 Okla. Trib. 288, — Am. Tribal Law - (1997) in which the highest court of the Cherokee National concluded that the Tribe’s membership could not request a referendum to challenge a motor fuel tax agreement between the State and the Tribe. The Court ruled that the right to petition for a referendum only extended to legislative acts of the Tribal Council and not to resolutions or administrative actions of the Council. Executing a motor fuel tax agreement, according to the Cornsilk court, is not lawmaking.
This is consistent with the rulings of many state courts on this issue. Although these rulings are certainly not binding upon this Court they can be looked to for interpretations of the referendum right.
Utilizing state decisions as some authority, an administrative agency, such as the RBC in this case, is not susceptible to petitions for referendum. The case law is very clear that initiative and referendum powers reserved to the people, although broad, are limited to legislation and do not extend to administrative matters. Garvin v. Ninth Judicial Dist. Court ex rel. County of Douglas, 118 Nev. 749, 59 P.3d 1180, 1181 (2002).
The Supreme Court of Ohio recently decided a case where a city manager executed a contract for solid waste services and was challenged by a group of realtors. State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections, 119 Ohio St.3d 478, 895 N.E.2d 177 (2008). The contract came as a result of an ordinance that had been enacted by an administrative agency. Id. The court held that the ordinance was acceptable because it only reiterated what existing laws had already authorized. Id. at 182.
A recent decision out of the Utah Supreme Court was very similar to the case at hand. The city council passed a resolution for a commuter rail system, and there was an attempt at a petition. Citizens for Responsible Transp. v. Draper City, 190 P.3d 1245, 1247 (Utah 2008). The petition was denied and the citizens tried to get a TRO to enjoin the city from building. Id, The court decided that the resolution did not have the force of law, so it was an administrative action. Id, at 1250. The determinative test in deciding whether an action is legislative or administrative in nature is whether it creates new law on the one hand, or merely executes or implements existing law on the other. Id. at 1248.
The court assured the citizens that they are not without recourse when they are unhappy with administrative decisions; their remedies lie in the political arena. Id. at 1249. If every dissatisfied citizen were allowed to invoke the referendum process for administrative actions, the efficiency and economy in the business administration of a city would be seriously affected. Id. Accordingly, the court reasoned that people have the opportunity to vote executive officials out of office. Id. This is the same recourse that the citizens of LLBO have available.
The California Court of Appeals also shed some light on why administrative acts are not subject to referendum. Lincoln Property Co. No. 41 Inc. v. Law, 45 Cal. App.3d 230, 119 Cal.Rptr. 292 (Cal.App. 1975). The reasoning for the rule is that to allow referendum to annul or delay administrative conduct would destroy the efficient administration of the business affairs of a city or municipality. Id. at 234, 119 Cal.Rptr. 292. Administrative acts are necessary to carry out the legislative poli- *467 des that have already been declared by the legislative body. Id. On the other hand, acts that make provisions for the ways and means of accomplishment may be generally classified as legislative. Id.
In Kubicek v. City of Lincoln a city council formed an administrative agency without voter approval. 265 Neb. 521, 658 N.W.2d 291, 294 (2003). The agency was going to oversee revitalization, transportation, and flood control in a certain area. Id. The court decided that the city’s formation of the agency was administrative, rather than legislative. Id. at 298. In this case, the city council had essentially combined three governmental entities to manage under existing statutory authority. Id. The court reasoned that To require a separate vote of the electorate each time the city council chooses to undertake a joint effort would clearly delay administrative action already approved of by the electorate in adopting the political subdivision provision. Id. at 299.
In another case out of California, a federally recognized Indian tribe had plans to build a casino resort near the city of Roh-nert Park. Worthington v. City Council of City of Rohnert Park, 130 Cal.App.4th 1132, 1136, 31 Cal.Rptr.3d 59 (Cal.App. 1 Dist.,2005). The tribe contacted the city council to negotiate, and they eventually came to an agreement. Id. at 1138, 31 Cal.Rptr.3d 59. The tribe was going to build, but would also pay the city $200 million over 20 years to mitigate the impacts of a casino. Id. The court found the city’s actions to be administrative, and not subject to referendum. Id. at 1140, 31 Cal.Rptr.3d 59.
The court reasoned that a governmental entity legislates when it unilaterally regulates, or in addition to declaring a public purpose, makes provisions for the ways and means of its accomplishment. Id. at 1143, 31 Cal.Rptr.3d 59. However, when an action requires the consent of the governmental entity and another party, the action is contractual or administrative. Id. Accordingly, the give-and-take involved when a government entity negotiates an agreement with a sovereign Indian tribe is not legislation, but is a process requiring the consent of both contracting parties. Id.
This is quite similar to the present case in a number of ways. First, Enbridge has paid millions of dollars to LLBO, with a million dollar bond for cleanup costs. (Defendant Memorandum at 10.) Second, the agreement appears to be negotiated. Also, Enbridge is apparently under heavy regulation and oversight by numerous agencies. Id. Policy favors letting elected officials do their jobs within the law, as long as the officials are not making new laws. In the present case, it seems apparent that the RBC was doing what they thought was best, given the money gained for the tribe. It is also important to consider the repercussions on future businesses wanting to come to LLBO. If businesses come to a contract with the RBC and later have to deal with referendums, they would simply avoid the hassle in the future.
Allowing executed contracts to be subject to rescission by referendum also raises some Indian Civil Rights Act issues because as a general principle governments cannot enact legislation impairing contractual obligations. Admittedly the impairment of contracts provision contained in the United States Constitution was not put into the Indian Civil Rights Act, 25 U.S.C. § 1302, but allowing the voters to impair existing contracts would not only make the Band potentially liable for breaches of contract action, but could also chill tribal economic development ventures. A party looking to contract with the Band may be dissuaded against doing *468 so if it knew that any contract it executed could be overturned by referendum election.
The unique thing about the MCT Constitution that seems to distinguish itself from the Cherokee Constitution and the state constitutions interpreted in the cases referenced above is that the Constitution specifically mentions resolutions as matters that are subject to the referendum right. The legislative-administrative dichotomy drawn by the Cherokee Court in Cornsilk therefore seems inapposite to the MCT Constitution model if the term resolution, as used in the MCT Constitution, was meant to apply to all administrative actions taken by the RBC. This Court is aware that the LLBO, as well as many other Tribes, utilize resolutions to administer government in a variety of ways including approving of contracts, making employment decisions, determining budgets, and other important administrative matters. If the term resolution as used in the MCT Constitution, is meant to apply to all actions taken by government the right of referendum is so broad that the people of the Band can overrule literally every action of government. Band government would be severely impacted.
The Court believes that the term resolution, as used in the MCT Constitution, refers to those legislative acts effected by the RBC by resolution. For example, many Indian tribes amend ordinances or tribal codes by resolution, instead of passing new ordinances that repeal or amend existing laws. This is a common practice in many tribal communities. So, for example, if a Tribe has an ordinance regulating the highways running through the reservation and if the Tribe wants to amend the ordinance to include a mandatory liability insurance provision it would do so by resolution instead of enacting a new ordinance or an ordinance adding this law to the existing ordinance. That resolution would be subject to the referendum process because it is legislative in nature.
The action of the RBC being challenged in this case was clearly administrative in nature and not legislative. Although the Court certainly has understanding for the passion of the Plaintiffs in this case to fight against a project that they truly feel will undermine the long-term security of their home, their challenge must be brought in the political realm and not this Court.
WHEREFORE, based upon the forego ing analysis it is hereby
ORDERED, ADJUDGED, AND DECREED that the amended complaint of the Plaintiffs be and hereby is DISMISSED with prejudice and the request for injunctive relief DENIED.

. In its second brief in opposition to the renewed motion for a preliminary injunction Enbridge argues that this Court would not have jurisdiction to hear any dispute regarding the issuance of rights-of-way for the project over fee lands located within the Leech Lake reservation because of the United States Supreme Court’s recent decision in Plains Commerce Bank v. Long Family Land & Cattle Co., 552 U.S. 1087, 128 S.Ct. 829, 169 L.Ed.2d 626(2008). The Court agrees that Plains Commerce would not countenance this Court’s authority to override a right of way issued by a non-Indian over his fee land on the reservation. However, this Court does not find that Plains Commerce would bar this Court from asserting jurisdiction over a dispute involving a non-Indian litigant’s attempts to run a pipeline over trust and allotted lands within the reservation boundaries, provided there were some substantive tribal law that would govern a legal analysis of the issue.

. The Court would note that a in a recent federal court decision, Natural Resources Defense Council Inc. v. United States Department of State and TransCanada Keystone Pipeline LP., September 29, 2009, 658 F.Supp.2d 105 (D.D.C.), the Court held that a NEPA challenge could not be mounted to the decision to permit a transnational pipeline project to proceed. Even assuming that this Court could enforce federal law, which itself may be an erroneous assumption, see Nevada v. Hicks, federal court interpretations of federal laws would be entitled to much weight in this Court.

. It should be noted, however, that the receipt of a sufficient number of signatures on the petition would probably be a condition precedent to the RBC even addressing this issue of constitutional interpretation.

. Some of the Bands, Mille Lacs for example, have created a division of power between the Band Assembly and the Band Executive branch in its internal laws.