THE STATE EX REL. LETOHIOVOTE.ORG ET AL. *v.* BRUNNER, SECY. OF STATE.

THE STATE EX REL. NEW MODELS ET AL. *v.* BRUNNER, SECY. OF STATE.

THE STATE EX REL. CUMMINGS *v.* BRUNNER, SECY. OF STATE.

[Cite as *State ex rel. LetOhioVote.org v. Brunner*,

125 Ohio St.3d 420, 2010-Ohio-1895.]

*Elections — Secretary of state's investigations under R.C. 3501.05(N) — Issuance*
*of subpoena is not exercise of quasi-judicial authority — Writ of*
*prohibition denied.*

(Nos. 2010-0367, 2010-0415, and 2010-0421 — Submitted April 27, 2010 —

Decided April 30, 2010.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1}  These are consolidated actions for writs of prohibition to prevent respondent, Secretary of State Jennifer Brunner, from enforcing subpoenas to compel relators to appear and testify at depositions and to produce documents related to their efforts to exercise their constitutional right of referendum. Because the secretary of state did not exercise judicial or quasi-judicial authority in issuing the subpoenas, we deny the writ.

## Facts

{¶ 2}  Relator LetOhioVote.org is a ballot-issue committee that requested a referendum on the video-lottery-terminal ("VLT") provisions of 2009 Am.Sub.H.B. No. 1 ("H.B. 1"), and relators Thomas E. Brinkman Jr. and Gene Pierce are committee members.  Pierce is also the treasurer of LetOhioVote.org, relator Carlo LoParo is a media-relations consultant for the committee, and relator Norman B. Cummings is a political consultant for the committee.

**{¶ 3}** On September 21, 2009, we granted a writ of mandamus in favor of LetOhioVote.org and its committee members to compel the secretary of state to treat the VLT provisions of H.B. 1 as subject to referendum because these provisions do not fall within any of the exceptions to the constitutional right of referendum. *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462. We stayed the VLT provisions for 90 days from the date of the decision to allow the committee and its members a meaningful opportunity to circulate a referendum petition. Id. at ¶ 54.

**{¶ 4}** On December 21, 2009, the committee filed its referendum petition with the secretary of state. After the secretary notified the committee that its petition was deficient by about 27,000 signatures, the committee filed over 175,000 supplemental signatures. On March 26, 2010, the secretary of state certified the VLT provisions of H.B. 1 to the November 2010 ballot for a referendum election.

**{¶ 5}** On January 29, 2010, the committee electronically filed its annual campaign-finance report for 2009 with the secretary of state's office. In its report, the committee listed $1,551,000 in contributions received in 2009, with all of the contributions coming from relator New Models. New Models claims to be a Washington, D.C. corporation with a principal place of business in McLean, Virginia, but its corporate status had been revoked by the District of Columbia in September 2009 "for having failed and/or refused to file reports and pay all fees due and owing on or before April 15, 2009." On March 29, 2010, New Models' corporate status was reinstated by the District of Columbia.

**{¶ 6}** Upon examining LetOhioVote.org's 2009 campaign-finance report, the secretary's staff found what they considered to be irregularities. The secretary of state decided to further investigate whether relator LetOhioVote.org's campaign-finance statement complied with the law, and on February 16, 2010, the secretary's office issued subpoenas for relators Pierce, LoParo, Brinkman,

Cummings, and the committee's records custodian to appear and testify as witnesses at depositions scheduled for March 5 and to produce certain documents related to the committee's finances and Internet website. The secretary of state's office also issued subpoenas for the custodian of records of relator New Models and its president, relator Tim Crawford, to appear and testify at the March 5 depositions and to produce certain documents related to financial and corporate information about New Models. The subpoenas claimed to be issued pursuant to R.C. 3501.05(N) and (CC) and threatened criminal sanctions pursuant to R.C. 3599.37 for a failure to appear, testify, and produce requested documents. All of the subpoenas were successfully served except for the ones issued to Cummings.

{¶ 7} On February 17, the day after she issued the subpoenas to relators, the secretary of state issued a press release entitled "Secretary Brunner Opens Campaign-Finance Investigation Regarding LetOhioVote.org." In her press release, the secretary of state opined that LetOhioVote.org had violated campaign-finance law by concealing the true sources of its funding. Notably, since Secretary of State Brunner took office in January 2007, she has filed approximately 764 complaints with the Ohio Elections Commission. She has not, however, issued subpoenas in connection with an investigation of alleged violations of campaign-finance law except for those that she issued in her investigation of LetOhioVote.org.

{¶ 8} In March 2010, relators filed these original actions for writs of prohibition to prevent the secretary of state from enforcing her subpoenas. We granted alternative writs and issued schedules for the submission of evidence and briefs. *State ex rel. LetOhioVote.org v. Brunner*, 124 Ohio St.3d 1489, 2010-Ohio-739, 922 N.E.2d 225; *State ex rel. New Models v. Brunner*, 124 Ohio St.3d 1502, 2010-Ohio-809, 922 N.E.2d 966; *State ex rel. Cummings v. Brunner*, 124 Ohio St.3d 1503, 2010-Ohio-863, 922 N.E.2d 967. We later granted the parties' joint motion to consolidate these cases. *State ex rel. LetOhioVote.org v. Brunner*,

124 Ohio St.3d 1511, 2010-Ohio-919, 923 N.E.2d 154; *State ex rel. New Models v. Brunner*, 124 Ohio St.3d 1512, 2010-Ohio-919, 923 N.E.2d 154; *State ex rel. Cummings v. Brunner*, 124 Ohio St.3d 1512, 2010-Ohio-919, 923 N.E.2d 155.

{¶ 9} When the secretary of state attempted to depose some of the relators in the course of discovery in these cases, we granted their motions for protective orders to prevent the depositions and deferred consideration of relators New Models' and its president's motion for sanctions until the merits determination. See, e.g., *State ex rel. LetOhioVote.org v. Brunner*, 124 Ohio St.3d 1525, 2010-Ohio-1230, 923 N.E.2d 624. We then denied the secretary's motion to vacate the protective orders. See, e.g., *State ex rel. LetOhioVote.org v. Brunner*, 124 Ohio St.3d 1527, 2010-Ohio-1247, 923 N.E.2d 1157.

{¶ 10} This case is now before the court for our consideration of the merits as well as the motion for sanctions. Because the parties' briefs are sufficient to resolve the legal issues raised, we deny the secretary of state's motion for oral argument.

**Legal Analysis**

*Prohibition*

{¶ 11} To be entitled to the requested writ of prohibition, relators must establish that by issuing the subpoenas, (1) Secretary of State Brunner is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. See *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214, ¶ 15; *State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 15.

*Quasi-Judicial Power*

{¶ 12} For the first requirement, "relators must establish that the secretary of state is about to exercise or has exercised judicial or quasi-judicial power."

*State ex rel. Parrott v. Brunner*, 117 Ohio St.3d 175, 2008-Ohio-813, 882 N.E.2d 908, ¶ 6. The office of secretary of state is a nonjudicial office. Therefore, we must determine whether the secretary of state exercised quasi-judicial authority by issuing subpoenas, requiring persons to testify and to produce documents, as part of her general investigative authority.

{¶ 13} We have consistently defined quasi-judicial authority as " 'the power to hear and determine controversies between the public and individuals that *require* a hearing resembling a judicial trial.' (Emphasis added.)" *State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections*, 119 Ohio St.3d 478, 2008-Ohio-5093, 895 N.E.2d 177, ¶ 16, quoting *State ex rel. Wright v. Ohio Bur. of Motor Vehicles* (1999), 87 Ohio St.3d 184, 186, 718 N.E.2d 908.

{¶ 14} The secretary of state claims that she was authorized by R.C. 3501.05(N)(1) to investigate whether LetOhioVote.org violated election law and by R.C. 3501.05(CC) to issue subpoenas in furtherance of her investigation. Neither R.C. 3501.05(N) nor 3501.05(CC), however, requires the secretary of state to conduct a quasi-judicial hearing when she decides to issue subpoenas as part of her investigation of a possible election-law violation. Therefore, the secretary has not exercised the requisite quasi-judicial authority. See *Parrott*, 117 Ohio St.3d 175, 2008-Ohio-813, 882 N.E.2d 908, ¶ 8-10 (because there is no requirement for the secretary of state to hold a hearing resembling a judicial trial when the secretary issues a directive or breaks a tie vote of a board of elections on whether to comply with the secretary's directive, a writ of prohibition would not lie against the secretary).

{¶ 15} Moreover, the mere fact that the subpoenas issued by the secretary of state themselves required relators to appear and testify at deposition proceedings that resemble in some respects a judicial trial does not warrant a different conclusion. "The dispositive fact is that no statute or other law *required*" the secretary of state to conduct a quasi-judicial hearing when she

issued the subpoenas. (Emphasis sic.) *State ex rel. Scherach v. Lorain Cty. Bd. of Elections*, 123 Ohio St.3d 245, 2009-Ohio-5349, 915 N.E.2d 647, ¶ 23 (mere fact that board of elections held a protest hearing resembling a judicial trial even though not required to do so did not constitute the exercise of quasi-judicial authority subject to a writ of prohibition); *State ex rel. Janosek v. Cuyahoga Support Enforcement Agency*, 123 Ohio St.3d 126, 2009-Ohio-4692, 914 N.E.2d 404, ¶ 1 ("Because no statute or other pertinent law *required* the agency to conduct a hearing resembling a judicial trial when it issued its notice to withhold income for spousal support, the agency did not exercise the judicial or quasi-judicial authority required for appellants to be entitled to the requested extraordinary relief in prohibition" [emphasis sic]).

{¶ 16} This result is consistent with our observation in *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1992), 63 Ohio St.3d 190, 195, 586 N.E.2d 114, that the "general obligation of the Secretary of State [under R.C. 3501.05(N)] to investigate and report violations of election laws imposes no specific adjudicatory procedure, does not even grant quasi-judicial authority, and is thus not comparable to * * * special statutory proceedings * * *. It commands an administrative act–an investigation–not an adjudicatory proceeding."

{¶ 17} Most of the cases cited by relators are not on point, because in those cases, the entire proceedings at issue, which tangentially included the power to subpoena, were, in fact, quasi-judicial in nature. See *Ohio Historical Soc. v. State Emp. Relations Bd.* (1990), 48 Ohio St.3d 45, 46-47, 549 N.E.2d 157 (proceedings before the State Employment Relations Board on a union's petition for a representation election were quasi-judicial because a hearing was conducted at which notice was given and testimonial and documentary evidence was submitted); *Haught v. Dayton* (1973), 34 Ohio St.2d 32, 35, 63 O.O.2d 49, 295 N.E.2d 404 (charter proceeding before a city civil service board, which provided

for a hearing on an appeal from a dismissal, reduction, or suspension, was a quasi-judicial proceeding).

{¶ 18} Relators' reliance on *State ex rel. Ministerial Day Care Assn. v. Montgomery*, 100 Ohio St.3d 343, 2003-Ohio-6446, 800 N.E.2d 18, is also misplaced, because we did not specifically hold in that case that the state auditor's issuance of a subpoena constituted a judicial or a quasi-judicial act. Instead, we resolved the prohibition claim by holding that the state auditor did not patently and unambiguously lack jurisdiction to issue the challenged subpoena. Id. at ¶ 13-16 (incorrectly numbered in the opinion as ¶ 4-7).

{¶ 19} Furthermore, the solitary case that relators cite that arguably supports their claim is inconsistent with our controlling precedent. In *Ohio Bell Tel. v. Ferguson* (1980), 61 Ohio St.2d 74, 15 O.O.3d 117, 399 N.E.2d 1206, we held that a writ of prohibition was the proper remedy to challenge the authority of the state auditor and the state examiner of the Bureau of Inspection and Supervision of Public Offices to issue subpoenas because it was uncontested that respondents' actions in issuing the subpoenas were "in the exercise of a quasi-judicial power." Id. at 77. We did not apply the pertinent test for determining whether quasi-judicial power was being exercised in that case, see, e.g., *Upper Arlington*, 119 Ohio St.3d 478, 2008-Ohio-5093, 895 N.E.2d 177, ¶ 16, and the case is bereft of any support for its conclusion in that regard. Consequently, we will not apply *Ohio Bell* here, in the context of an investigation by the secretary of state, which we expressly held in a later case to be an administrative rather than a quasi-judicial act. See *Taft*, 63 Ohio St.3d at 195, 586 N.E.2d 114.

{¶ 20} Therefore, because no statute or other pertinent law required the secretary of state to conduct a hearing resembling a judicial trial when she decided to issue the subpoenas to relators in furtherance of her investigation of LetOhioVote.org's 2009 campaign-finance report, the secretary of state did not exercise quasi-judicial authority in issuing them. *Scherach*, 123 Ohio St.3d 245,

2009-Ohio-5349, 915 N.E.2d 647, ¶ 22-23; *Parrott*, 117 Ohio St.3d 175, 2008-Ohio-813, 882 N.E.2d 908, ¶ 8-10.

*Sanctions*

{¶ 21} When we granted the motion of relators New Models and Crawford for a protective order, we deferred consideration of their motion for sanctions against the secretary of state and her counsel for the attempted subpoenas for depositions and production of documents in discovery in this case. Under S.Ct.Prac.R. 14.5(A), if the court, "sua sponte or on motion by a party, determines that an appeal or other action is frivolous or is prosecuted for delay, harassment, or any other improper purpose, it may impose, on the person who signed the appeal or action, a represented party, or both, appropriate sanctions. * * * An appeal or other action shall be considered frivolous if it is not reasonably well-grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Although we granted the protective order, we are not persuaded that the secretary's attempted discovery constituted frivolous conduct, because it was at least in part directed to the issue of New Models' corporate status and standing. Therefore, we deny the motion for sanctions.

**Conclusion**

{¶ 22} Consequently, because the secretary of state did not exercise quasi-judicial authority in issuing the subpoenas that relators challenge, relators are not entitled to the requested extraordinary relief in prohibition. This result does not leave relators without an adequate remedy, for a challenge may be made to the propriety of the subpoenas in a common pleas court action for a prohibitory injunction. *Scherach*, 123 Ohio St.3d 245, 2009-Ohio-5349, 915 N.E.2d 647, ¶ 25. For the foregoing reasons, relators are not entitled to the requested extraordinary relief in prohibition. The parties' remaining claims, including those regarding whether the secretary of state patently and unambiguously lacked

jurisdiction to issue the challenged subpoenas, are rendered moot by this holding and need not be addressed. This is consistent with our general rules precluding advisory opinions and extolling judicial restraint. See *LetOhioVote.org*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 51.

Writ denied.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, ACTING C.J., concurs separately.

The late CHIEF JUSTICE THOMAS J. MOYER did not participate in the decision in this case.

_____

**PFEIFER, ACTING C.J., concurring.**

{¶ 23} On February 21, 1912, former president Theodore Roosevelt addressed the delegates at the Ohio Constitutional Convention regarding initiative and referendum:

{¶ 24} "If in any state the people are themselves satisfied with their present representative system, then it is of course their right to keep that system unchanged; and it is nobody's business but theirs. But in actual practice it has been found in very many states that legislative bodies have not been responsive to the popular will. Therefore I believe that the state should provide for the possibility of direct popular action in order to make good such legislative failure." 1 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1913) 383, available at http://www.supremecourt.ohio.gov/LegalResources/Law Library/resources/day24.pdf.

{¶ 25} Wouldn't Teddy be dismayed to learn that the "direct popular action" of the people of Ohio is far, far from direct, involving straw men, front organizations, red herrings, and smoke and mirrors, and winding its way from Ohio to the New Models' "headquarters" in a nondescript house in suburban

McLean, Virginia, and back again, with possibly a couple of stops in the boardroom of a gaming company or in the luxury suite of a basketball arena? Shouldn't we all be dismayed that the exercise of pure democracy that is the right of referendum, added to our Constitution after a vote of the people in 1912, has been made impure through surreptitious funding? Shouldn't we expect our secretary of state, as Ohio's chief elections officer, to aggressively investigate instances where our election laws appear to be exploited? Or in the alternative, should we not expect her to investigate in order to identify a gaping hole in our election law that could not have been intended by the General Assembly?

{¶ 26} I concur.

_____

Langdon Law, L.L.C., David R. Langdon, Thomas W. Kidd Jr., and Bradley M. Peppo, for relators LetOhioVote.org, Thomas E. Brinkman Jr., Gene Pierce, and Carlo LoParo.

Baker & Hostetler, L.L.P., John H. Burtch, Rodger L. Eckelberry, and Robert J. Tucker, for relators New Models and Timothy Crawford.

Axelrod, L.L.C., Brian J. Laliberte, and David F. Axelrod, for relator Norman B. Cummings.

Richard Cordray, Attorney General, and Richard N. Coglianese, Erick D. Gale, and Pearl M. Chin, Assistant Attorneys General, for respondent.

_____