**LAYTON CITY, Plaintiff and Appellee,**

v.

**Monika S. PERONEK, Defendant and Appellant.**

**No. 900025–CA.**

Court of Appeals of Utah.

Dec. 28, 1990.

---

D. Bruce Oliver (argued), Oliver & Parker, P.C., Salt Lake City, for defendant and appellant.

Steven L. Garside (argued), Asst. City Atty., Layton, for plaintiff and appellee.

Before GREENWOOD, JACKSON and ORME, JJ.

ORME, Judge:

Defendant appeals from an order finding she violated the terms of her probation and imposing an additional term of incarceration and an additional fine as a consequence. We reverse.

## FACTS

On October 17, 1989, defendant entered a plea of guilty to the charge of Reckless Driving, in violation of Utah Code Ann. § 41-6-45 (1988). The court sentenced defendant to sixty days in jail, a $600 fine, and twelve months probation. The court suspended all but four days of the jail time, and imposed a fine and assessments totaling $575. As a term of probation, the

court ordered that defendant not consume alcohol until after her four-day sentence had been completed and ordered defendant to submit to alcohol testing upon request at the county jail.

Defendant served her jail term over the course of two consecutive weekends. Upon reporting for the second weekend, she was accused by a jailer of having consumed alcohol. The jailer required that defendant submit to a breath test. The jailer then completed a jail incident report, to be forwarded to jail officials, stating that defendant had consumed alcohol prior to reporting for weekend incarceration. Based on this report, Lieutenant Jan Cunningham, a jail supervisor, submitted an affidavit to the court stating that defendant had reported to the jail after consuming alcohol, in violation of the terms of her probation.

A hearing on the alleged probation violation was held on January 8, 1990. Layton City called Lieutenant Cunningham as its only witness. He testified that a file is normally maintained on each person incarcerated at the jail, although he did not know if a file was maintained for defendant. He also testified that he supervises the persons who are the custodians of the prisoner files, yet he is not the custodian of any of these files. He stated that he had no personal knowledge of the incident upon which his affidavit was based.

The court ruled that Lieutenant Cunningham, although not the custodian of the records, was otherwise qualified to testify about the incident report and admitted the report under the business records exception of Utah R.Evid. 803(6). The court found that defendant had violated the terms of her probation and reimposed portions of her suspended sentence. On appeal, defendant argues that admission of the incident report was improper under Rule 803(6), and should have been precluded under Rule 803(8). Defendant also challenges admission of the incident report under the Confrontation Clause of the Sixth Amendment.

### RULES OF EVIDENCE 803(6) & 803(8)(B)

Although there were some casual references to defendant's being in contempt of court, the trial court conducted the proceeding before it as a probation revocation hearing. We note that the Utah Rules of Evidence do not mandatorily apply to certain specified proceedings, including probation revocation hearings. *See* Utah R.Evid. 1101(b)(3). Notwithstanding, the court chose to employ the Utah Rules of Evidence in handling the instant matter. As the prosecutor and defense counsel discussed the proffered incident report, the court indicated it had recently researched Rule 803, and it was the court which first articulated Rule 803(6) as an appropriate vehicle for the report's admission. We therefore first consider defendant's claim under Rule 803, since that was the trial court's expressed basis for admitting the report. We review the trial court's evidentiary ruling for an abuse of discretion. *E.g., State v. Drawn*, 791 P.2d 890, 894 (Utah Ct.App.1990).

Rule 803 enumerates exceptions to the hearsay rule which apply when the declarant is not shown to be unavailable.[1] Subsection (6), the "business records exception," provides, with our emphasis, as follows:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and *if it was the regular practice of that business activity to make the memorandum,* report, record or data compilation, all as shown by the testimony of *the custodian*

---

**1.** While adopted statutorily, these exceptions were developed by the common law over the past three centuries of the hearsay rule's existence. *See* 5 *Wigmore on Evidence* § 1364 (Chadbourn rev. ed. 1974).

*or other qualified witness,* unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The city asserts that the incident report qualifies as a record kept in the regular course of the jail's business, relying on *State v. Bertul,* 664 P.2d 1181 (Utah 1983).

In *Bertul,* the Court offered four guiding factors in determining whether records might qualify under the business records exception:

(1) the record must be made in the regular course of the business or entity which keeps the records; (2) the record must have been made at the time of, or in close proximity to, the occurrence of the act, condition or event recorded; (3) the evidence must support a conclusion that after recordation the document was kept under circumstances that would preserve its integrity; and (4) the sources of the information from which the entry was made and the circumstances of the preparation of the document were such as to indicate its trustworthiness.

*Id.* at 1184. The Court in *Bertul* concluded, however, that when police reports are offered by the prosecution under the business records exception, as in this case, "they should ordinarily be excluded." *Id.* at 1185.

Emphasizing the factors enumerated in *Bertul* but ignoring the Court's holding in that case, the city asserts that jail personnel, like police officers, are required to make reports of all incidents, and that such reporting is in the ordinary course of business. However, we note that the incident report in this case did not grow out of a routine practice to which prisoners are customarily subjected upon incarceration. Rather, an accusatory investigation was commenced and a report completed only upon a jailer's individualized suspicion that defendant had consumed alcohol. From all that appears, the decision to subject defendant to alcohol testing, the manner of testing, and the recordation of the test results were entirely *ad hoc.*

■ Moreover, the fourth requirement suggested in *Bertul,* concerning the sources and circumstances of preparation, was also lacking in Lieutenant Cunningham's testimony. The record lacks any evidence that accepted testing procedures were employed in administering the breath test or that the test was administered by a trained and certified technician. *See Triplett v. Schwendiman,* 754 P.2d 87, 88–89 (Utah Ct.App.1988) (discussing breathalyzer testing protocols); *Kehl v. Schwendiman,* 735 P.2d 413, 417 (Utah Ct.App.1987) (breathalyzer test inadmissible even under relaxed evidentiary standards for administrative hearing where no affidavits that breathalyzer functioned properly and no evidence that test was administered by a qualified technician).

In any event, the Court in *Bertul* held that police reports made for the purpose of prosecuting an offense and offered by the prosecution lack sufficient reliability so as to be admissible under the business records exception. *See Bertul,* 664 P.2d at 1184. *See also Kehl,* 735 P.2d at 417 (DUI report form inadmissible because neither officer completing the report or the official custodian testified). The incident report in this case is on substantially the same footing. The report was made with the intent to submit it to the court for "prosecution" of a probation violation. The report was accompanied by Lieutenant Cunningham's sworn affidavit, which in form and substance is virtually identical to a criminal complaint.

We note also that *Bertul* was a case in which the custodian of the records was present in court to establish at least a minimal foundation for admissibility, as required under Rule 803. In contrast, Lieutenant Cunningham acknowledged he was

not the custodian of incident reports. The record reflects that Lieutenant Cunningham was even unaware whether defendant was the subject of a file in the jail, as is routinely kept on jail inmates.

■ However, under Rule 803(6), the court may also allow another "qualified witness" to introduce the business record. Lieutenant Cunningham, who admittedly had no knowledge of the circumstances of the report's creation, and had no custodial responsibility for the report, was allowed to testify as a "qualified witness." Lieutenant Cunningham was twice-removed in the organizational chain from the jailer that conducted the investigation and completed the report. The record is void of any qualifications that Lieutenant Cunningham might have had to allow him to properly lay a foundation for the admission of the incident report.

■ Defendant also claims that even if the incident report might be otherwise admissible under Rule 803(6), it should have been barred from admission as inadmissible hearsay under Rule 803(8)(B), which prohibits the introduction of police reports in criminal cases. We agree. As discussed above, the incident report did not materially differ from a crime report or other investigatory report expected to lead to some form of prosecutorial action. As such, it was inadmissible hearsay. *See, e.g., Bertul,* 664 P.2d at 1184 (police reports made for the purpose of prosecuting an offense and offered by the prosecution do not provide a basis for reliability required under the business records exception). *See also State v. Reitenbaugh,* 392 N.W.2d 486, 489 (Iowa 1986) (arrest warrant, containing statements of probation officer concerning defendant's violation of conditions of pre-trial release, inadmissible under Iowa R.Evid. 803(8)(B)(i)); J. Weinstein & M. Berger, 4 *Weinstein's Evidence,* ¶ 803(8)[04] (1990) (investigative reports introduced against a defendant do not carry sufficient indicia of reliability for introduction under. business records exception).

Because we conclude the incident report was not prepared in the regular course of jail administration, being rather an investigatory report intended for prosecutorial purposes, and that no custodian of the records or person in a similar position was called to lay proper foundation for the report, we hold that the court abused its discretion in admitting the incident report in reliance on the business records exception.

## DUE PROCESS

■ Since the court chose, in its sound discretion, to govern the hearing consistent with the Utah Rules of Evidence, notwithstanding Rule 1101(b)(3), we have analyzed its ruling under the applicable provisions of the Rules. However, even if it is deemed proper to view the matter free of the constraints imposed by the Utah Rules of Evidence, the same result would obtain under constitutional analysis.[2]

■ Although not all of the procedural and evidentiary protections required in a criminal case are available in probation revocation proceedings, *see United States v. Simmons,* 812 F.2d 561, 564 (9th Cir.1987), such proceedings must nonetheless be fundamentally fair so as to satisfy the Due Process Clause of the Federal Constitution. *U.S. v. Holland,* 850 F.2d 1048, 1050 (5th Cir.1988) ("The revocation of probation implicates a probationer's fundamental liberty interest and hence entitles him to procedural due process.").

---

**2.** Both parties have failed to present this court with arguments premised on Article I, section 12, of the Utah Constitution, and we therefore review the evidentiary ruling solely under the federal constitution. *See Drawn,* 791 P.2d at 893 n. 2.

Ordinarily, we do not reach constitutional questions, state or federal, if a matter can be properly decided on the basis of a statute or rule. We reach the constitutional issue in this case only because of the persuasive argument that the court's reliance on Rule 803 was gratuitous and we should affirm its decision if we can do so viewing the matter from the correct vantage point, i.e., that the Utah Rules of Evidence by their terms did not apply to this proceeding.

At a minimum, due process requires that the probationer be given: 1) written notice of the claimed violation of probation; 2) disclosure of the evidence against him; 3) an opportunity to be heard in person and to present witnesses and documentary evidence; 4) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation; 5) a neutral and detached hearing body; and 6) a written statement by the factfinder of the evidence relied on and reasons for revoking the probation.

*Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)).

In this case, the niceties of the business records exception aside, admission of the incident report was not consistent with the standard recognized in *Holland*. Particularly, defendant's right of meaningful confrontation was denied, without any showing of good cause,[3] when Layton City chose to make its case through Lieutenant Cunningham, who had only limited knowledge as outlined above, rather than through the jailer who was actually involved. The ensuing evidence against defendant was violative of the confrontation prong of the Due Process standard articulated in *Holland*.

■ The hearsay rule long predates the Federal Constitution,[4] and it is generally accepted that the Confrontation Clause was intended by the drafters of the Bill of Rights to exclude certain hearsay testimony even if otherwise admissible. *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531,

2537, 65 L.Ed.2d 597 (1980). Whether the use of documentary hearsay as a substitute for "live" testimony by an accuser is violative of the Confrontation Clause turns on the indicia of reliability of the document or statement sought to be admitted. *Id.* at 65–66, 100 S.Ct. at 2538–39; *United States v. Bell*, 785 F.2d 640, 643 (8th Cir.1986); *State v. Moosman*, 794 P.2d 474, 481 (Utah 1990); *State v. Webb*, 779 P.2d 1108, 1112 (Utah 1989); *Bertul*, 664 P.2d at 1183. We therefore consider whether the incident report was endowed with sufficient indicia of reliability and accuracy so as to be admissible, consistent with notions of fundamental fairness, as a substitute for testimony by— and the corresponding opportunity for cross-examination of—defendant's accuser, i.e., the jailer who detected alcohol, administered the breathalyzer test, and filed the incident report.

A critical component of the incident report was a record of an electronic breath analysis which allegedly demonstrated the presence of alcohol in defendant's bloodstream. Since the investigating jailer did not testify, and Lieutenant Cunningham had no personal knowledge of the incident, this was the only evidence which tended to show defendant had consumed alcohol. Nothing in the incident report itself or in Lieutenant Cunningham's testimony supported any inference that the device used to administer the breath test was functioning properly, or that the person administering the test had the appropriate skills to operate the device and interpret the results, or that the record card appended to the incident report was an accurate reflection of the device's readings.[5]

While there is "universal acceptance of the reliability of [breathalyzer] evidence,"

---

**3.** We note that the issue of good cause was not reached by the trial court since it found Lieutenant Cunningham to be a "qualified witness" under Rule 803(6). However, nothing in the record suggests good cause for denying defendant this fundamental right. *Cf. United States v. Bell*, 785 F.2d 640, 642–43 (8th Cir.1986) (good cause might be found if the witness would be placed in danger by testifying or where producing the witness would cause great hardship and expense and the documentary evidence is demonstrably reliable—absent such factors good cause cannot be found).

**4.** The hearsay rule traces its origins back nearly 500 years, although it was first clearly defined approximately 300 years ago. 5 *Wigmore on Evidence* § 1364 (Chadbourn rev. ed. 1974).

**5.** Indeed, the test record indicates one blood alcohol percentage and the incident report another percentage. Although the disparity between the two figures is slight, there is nothing in the record to explain the difference.

*Layton City v. Watson*, 733 P.2d 499, 500 (Utah 1987) (quoting *Murray City v. Hall*, 663 P.2d 1314, 1320 (Utah 1983)), such reliance is premised upon the proper operation of the testing device. In Utah, it is statutorily required that the breathalyzer test be administered according to certain standards before such a test is entitled to a presumption of validity. Utah Code Ann. § 41-6-44.3 (1988). Though the statute's scope is expressly directed at breathalyzer tests administered in investigations of alcohol-related traffic offenses, we see no reason why similar standards should not apply to such tests when used to provide the basis for prosecution of, and incarceration for, a probation violation. Defendant has the right to require the city to present competent evidence. *Cf. Triplett*, 754 P.2d at 89 (conformity with standards of testing and administration produces residuum of competent evidence of reliability of the breath test). The city failed in its burden to do so, and defendant's due process rights were accordingly denied. *Cf. Triplett*, 754 P.2d at 88 (test presumed valid when the officer testified that he properly administered the test, the device appeared to properly function, he was trained and certified to operate the device, and he followed the prescribed written instructions for the device).

## CONCLUSION

Admission of the incident report was improper under Rule 803(6) and should in any event have been precluded under Rule 803(8)(B). Even if the trial court had chosen not to employ the Utah Rules of Evidence in the proceeding before it, admission of the incident report was violative of defendant's right to due process of law. Defendant was therefore improperly determined to have violated probation and the order so concluding and reimposing initially suspended terms of sentence is vacated.

GREENWOOD and JACKSON, JJ., concur.