IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100714-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (July 12, 2012) |
| Randy James Turner, | ) | |
| | ) | 2012 UT App 189 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 071906703
The Honorable Vernice Trease

Attorneys:  Jason A. Schatz, Salt Lake City, for Appellant
            Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee

-----

Before Judges McHugh, Voros, and Davis.

McHUGH, Presiding Judge:

¶1     Randy James Turner appeals from his conviction for driving under the influence of alcohol (DUI) in violation of Utah Code section 41-6a-502, a third degree felony. *See* Utah Code Ann. §§ 41-6a-502, -503(2) (2010). Turner argues that the breath test procedures adopted by the Commissioner of the Department of Public Safety (the Commissioner) pursuant to Utah Code section 41-6a-515(1) violate rule 702 of the Utah Rules of Evidence. *See* Utah Code Ann. § 41-6a-515(1); Utah R. Evid. 702.[1]

---

[1]Rule 702 of the Utah Rules of Evidence was amended effective December 1, 2011. *See* Utah R. Evid. 702, 2011 advisory committee note. However, these changes

(continued...)

Alternatively, Turner asserts that section 41-6a-515 is an unconstitutional infringement on the Utah Supreme Court's power to enact rules of evidence. *See* Utah Const. art. VIII, § 4 ("The Supreme Court shall adopt rules of procedure and evidence to be used in the courts of the state and shall by rule manage the appellate process."). Turner also contends that the admission of the breath test results violated his due process rights both because the results are unreliable and because section 41-6a-515 unconstitutionally shifted the burden of proof from the State to Turner. We affirm.

BACKGROUND

¶2      In June 2007, a police officer stopped Turner for making several lane changes and a U-turn without signaling. Suspecting that Turner was intoxicated, the officer requested the assistance of another officer to conduct a DUI investigation. Turner admitted to drinking "about five beers." After administering several field sobriety tests, the officers determined that Turner exhibited signs of impairment and arrested him. One of the officers at the scene obtained Turner's consent to a breath test. After inspecting Turner's mouth and waiting seventeen minutes, the officer used a portable Intoxilyzer (Intoxilyzer) to test Turner's breath alcohol concentration. The test revealed a breath alcohol concentration of 0.170 grams, which is over twice the legal limit of 0.08 grams.[2] *See* Utah Code Ann. § 41-6a-502(1). The officer did not test Turner more than once and did not confirm the Intoxilyzer results with a contemporaneous blood test or other alternative testing method.

¶3      Before trial, Turner filed a motion to suppress the Intoxilyzer results. Turner argued that Utah Code section 41-6a-515 violates the Utah Constitution's delegation of power to the Utah Supreme Court to establish court rules by supplanting the requirements of rule 702 of the Utah Rules of Evidence. *See* Utah Const. art. VIII, § 4. Turner also claimed that the State's "periodic accuracy verification process" for Intoxilyzers, as well as its suspect-specific testing methods, were inadequate to ensure

---

[1](...continued)
were intended to be "stylistic only." *See id.* Accordingly, we cite the current version for the convenience of the reader.

[2]"[A]lcohol concentration in the breath" is "based upon grams of alcohol per 210 liters of breath." Utah Code Ann. § 41-6a-502(2) (2010).

reliable test results, thereby violating Turner's due process rights under the Utah and United States Constitutions. The State responded by challenging each of Turner's positions.

¶4 At a hearing on Turner's motion to suppress, two experts testified about the procedures for maintaining and calibrating Intoxilyzer machines and for administering Intoxilyzer tests. The State called a trooper (Trooper) for the Utah Highway Patrol (highway patrol), who was a member of the Intoxilyzer and alcohol crew. The defense presented an emeritus professor of pharmacy (Professor) from a state university.

¶5 Trooper testified that as part of his primary duties, he maintained Intoxilyzers in several counties. He explained that this included "check[ing] each [I]ntoxilyzer every 40 days, verify[ing] that [the Intoxilyzers were] functioning properly, provid[ing] the supplies, respond[ing] to any issues that any officers might have, troubleshoot[ing], maintain[ing], [and] basically just check[ing to] make sure that [the Intoxilyzers were] working properly." To gain the skills necessary to perform his job, Trooper attended a ten-day course taught by the manufacturer of the Intoxilyzer and also received additional training from his supervisors. After describing his duties and training, Trooper testified regarding the internal diagnostic tests the Intoxilyzer automatically conducts before each individual breath test to verify that the machine is operating properly. He then identified the various tests he performed every forty days, as required by rule R714-500-6 of the Utah Administrative Code. Specifically, he described a series of checks he conducts to confirm that the Intoxilyzer will disallow an improper test, including pressing the start button or breathing into the machine at the wrong time, holding a source of alcohol next to the breath tube, and placing alcohol on his tongue immediately before blowing into the machine. Trooper explained that Intoxilyzers are designed to measure alcohol in the deep lung air and that these checks ensure that the Intoxilyzer is properly disallowing tests where mouth alcohol is detected.

¶6 Trooper also testified that the State uses a "wet bath simulator," also known as an external calibrator, every forty days to "check the [I]ntoxilyzer's known internal standards" by simulating a breath test. He explained that the wet bath simulator uses a known ratio of water to alcohol to test the machine. If the Intoxilyzer is working accurately, it should register a reading of 0.100 whenever that solution is used. However, Trooper indicated that the administrative rule governing the calibration of Intoxilyzers allows a margin of error of "plus or minus 5 percent or .005, whichever is

greater." He also reported that the testing solution used as the standard to measure the accuracy of the Intoxilyzer results is commercially produced by the manufacturer of the wet bath simulator and then independently tested by an unaffiliated laboratory to ensure that the water-to-alcohol ratio in the solution is as represented.

¶7 During direct examination, the State asked Trooper whether other states require two or more breath tests per DUI suspect, and Trooper replied that some states do, but that other states, like Utah, require only a single breath test. Trooper also noted that although some states require a calibration verification, such as a wet bath simulator, whenever a DUI suspect is tested, other states join Utah in not requiring pretest calibration in the field. Turner did not raise any objections to Trooper's qualifications or his testimony.

¶8 On cross-examination, the defense asked Trooper why the highway patrol performed only one breath test on DUI suspects instead of performing two or more tests to verify accuracy by means of comparison. Trooper explained that multiple tests are unnecessary because "the sample is continuously analyzed during the test" and that the Intoxilyzer is "sampling or testing that same [breath] sample several times a second as it's processing through." In response to the defense's further inquiry, Trooper explained that it would "be extremely difficult to contaminate a person's breath" and that even belching while blowing on the Intoxilyzer would not contaminate the results.

¶9 The defense's expert, Professor, testified that if an external calibrator, such as a wet bath simulator, is not used at the time a DUI suspect is tested, then the procedure "is not recognized forensically as a reliable procedure." He explained that "testing . . . once every 40 days to check to see if the machine is operating properly . . . doesn't assure that the machine's operating [properly] at the time that the individual subject is being tested." Professor also testified that the majority of states require duplicate testing of a DUI suspect's breath and opined that duplicate results should be obtained to guarantee accurate and reliable results.

¶10 In addition to the expert testimony, Turner presented reports from various organizations and experts in the field regarding the best practices recommended to ensure accurate Intoxilyzer results. The reports assert that "[b]reath alcohol measurements should be conducted on at least duplicate independently exhaled . . . breath samples" and that external calibration with a wet bath simulator or another type of simulator should be performed before each test of a DUI suspect.

¶11    After the hearing, the trial court issued a memorandum decision and order. It first ruled that Utah Code section 41-6a-515 was constitutional. Second, the trial court considered the admissibility of the Intoxilyzer results under rule 702 of the Utah Rules of Evidence, reasoning that Trooper's testimony provided a threshold showing of reliability. In making this determination, the trial court recognized that it is "not the function of the court in [its] gatekeeper role to decide which procedure is *more* reliable." Instead, the court recognized that its proper role was to "determine only that the [Intoxilyzer] test procedures the State utilizes, if not generally accepted by the relevant scientific community, meet a threshold showing of reliability, are based on sufficient data, and have been reliably applied in this case."

¶12    After the trial court's ruling, Turner entered a guilty plea, specifically preserving his right to appeal the trial court's ruling. He then filed a timely appeal challenging the trial court's denial of his motion to suppress the Intoxilyzer results and the subsequent entry of his conviction and sentence.

ISSUES AND STANDARDS OF REVIEW

¶13    On appeal, Turner first contends that the trial court erred in admitting the Intoxilyzer results under rule 702 of the Utah Rules of Evidence because the calibration and maintenance procedures established by the Commissioner under Utah Code section 41-6a-515(1) are unreliable. We review a trial court's admission of expert testimony "under an abuse of discretion standard," reversing only where "the decision exceeds the limits of reasonability." *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794 (internal quotation marks omitted).

¶14    Alternatively, Turner argues that section 41-6a-515 is unconstitutional because it infringes on the Utah Supreme Court's authority to enact rules of evidence under article VIII, section 4 of the Utah Constitution and because it improperly shifts the burden of proof to the defendant. "Constitutional challenges to statutes present questions of law, which we review for correctness." *State v. Robinson*, 2011 UT 30, ¶ 7, 254 P.3d 183 (internal quotation marks omitted).

¶15    Next, Turner argues that the admission of the Intoxilyzer results violated his due process rights because those results were not obtained in a manner that would ensure

their scientific accuracy and reliability. Turner also argues that section 41-6a-515 violated his due process rights because it unconstitutionally shifts the burden of proof from the State to Turner. *See* Utah Code Ann. § 41-6a-515 (2010). "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

ANALYSIS

I. The Trial Court Did Not Exceed Its Discretion in Applying Rule 702.

¶16    Section 41-6a-515 provides that the Commissioner of the Department of Public Safety "shall establish standards for the administration and interpretation of chemical analysis of a person's breath," and that if those standards are met, "there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary." *See* Utah Code Ann. § 41-6a-515. The Commissioner has promulgated standards for the administration and interpretation of Intoxilyzer test results by rule. *See generally* Utah Admin. Code R714-500-1 to -13. Turner contends that section 41-6a-515 is unconstitutional because it infringes on the powers of the Utah Supreme Court to enact rules of evidence and because it shifts the burden of proof from the State to the Defendant. *See* Utah Const. art. VIII, § 4 (supreme court's rulemaking powers); *id.* art. I, § 7 (due process). Turner also asserts that the rule R714-500 standards do not meet the threshold level of reliability required under rule 702 of the Utah Rules of Evidence and, therefore, the trial court violated Turner's constitutional due process rights by admitting the Intoxilyzer results.

¶17    In addition to its ruling that section 41-6a-515 is constitutional, the trial court determined that the Intoxilyzer results were admissible because they met a threshold showing of reliability under rule 702. In reaching that conclusion, it did not consider the presumption of admissibility created by section 41-6a-515 or the fact that the calibration, maintenance, and administration of the Intoxilyzer used to test Turner complied with the requirements of administrative rule R714-500 of the Utah Administrative Code. Instead, the trial court based its decision on Trooper's testimony about the methods employed to ensure the reliability of the Intoxilyzer results. In *Murray City v. Hall*, 663 P.2d 1314 (Utah 1983), the supreme court explained that the

statute then in effect relating to the admissibility of Breathalyzer[3] results was designed to avoid the "financial burden of calling as a witness in every DUI case the public officer responsible for testing the accuracy of the [B]reathalyzer equipment." *Id.* at 1320 (citing a prior version of Utah Code Ann. § 41-6-44.3 (current version at *id.* § 41-6a-515 (2010))). Here, the officer responsible for testing the accuracy of the Intoxilyzer equipment testified, thereby eliminating the need to rely on the statutory presumption. And the trial court did not rely on it. Thus, if the trial court acted within its discretion in admitting the test results under rule 702, we need not reach Turner's constitutional challenges to section 41-6a-515. *See, e.g., Gardner v. State*, 2010 UT 46, ¶ 93, 234 P.3d 1115 (recognizing the supreme court's "obligation to avoid addressing constitutional issues unless required to do so" (internal quotation marks omitted)); *Citizens for Responsible Transp. v. Draper City*, 2008 UT 43, ¶ 15, 190 P.3d 1245 (same); *State v. Johnson*, 2009 UT App 382, ¶ 18, 224 P.3d 720 ("[C]ourts should avoid reaching constitutional issues if the case can be decided on other grounds." (internal quotation marks omitted)).

¶18 Rule 702 provides that an expert may testify if his specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," *see* Utah R. Evid. 702(a), and "there is a threshold showing that the principles or methods that are underlying in the testimony [1] are reliable, [2] are based upon sufficient facts or data, and [3] have been reliably applied to the facts," *see id.* 702(b). The rule assigns trial judges the role of "'gatekeeper'" in an effort "to screen out unreliable expert testimony." *Id.* R. 702 advisory committee note. However, the trial court need only determine that the testimony meets a "threshold showing" of reliability. *See id.* (internal quotation marks omitted). This requirement will be satisfied if there is "a basic foundational showing of indicia of reliability." *Id.* Accordingly, it is not the court's responsibility to determine that the testimony is "indisputably correct." *See id.* Even when opposing experts apply different methodologies or reach contradictory conclusions, the trial court should admit the evidence so long as the threshold showing of reliability has been satisfied. *See State v. Sheehan*, 2012 UT App 62, ¶¶ 27-28, 273 P.3d 417. "[T]he factfinder bears the ultimate responsibility for evaluating the accuracy, reliability, and weight of the testimony," while the court makes the preliminary determination of admissibility.

---

[3]Breathalyzers and Intoxilyzers are each machines used to test breath alcohol concentration. Because they use different technologies, we distinguish between them in this opinion. *See generally State v. Relyea*, 2012 UT App 55, ¶ 14 n.5.

*See Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶ 47, 269 P.3d 980; *see also Sheehan*, 2012 UT App 62, ¶¶ 27-28.

¶19  The State argues that Trooper's testimony satisfied the threshold requirement of reliability under rule 702, specifically noting that it was not the trial court's responsibility to determine which procedure was more reliable.  In contrast, Turner contends that his expert's testimony and the evidence supporting his testimony constitute the generally accepted standards of the "relevant expert community."  Because that evidence advocates procedures different than those followed in Utah, he claims that the Intoxilyzer results were unreliable and therefore inadmissible.  However, Turner's argument would expand the role of the trial judge from the gatekeeper to the factfinder.  Where both experts' testimony meets the threshold requirements of rule 702, both should be admitted and the question of which is more persuasive and reliable is left to the jury.  *See Gunn Hill*, 2012 UT App 20, ¶ 47.  We now consider whether the trial court acted within its discretion in admitting Trooper's testimony on the reliability of the Intoxilyzer results.

¶20  Because Turner did not challenge Trooper's expert qualifications, we proceed to the question of whether the principles underlying Trooper's testimony are reliable, based upon sufficient facts or data, and are reliably applied to the facts of the case.  *See* Utah R. Evid. 702.  We first clarify that Turner challenges the procedures the State currently uses to maintain Intoxilyzers, not the reliability of Intoxilyzer results when proper procedures are followed.  Indeed, the Utah Supreme Court has recognized that Intoxilyzer results are "universally accept[ed]" as reliable.  *See Hall*, 663 P.2d at 1320 (citing a prior version of Utah Code Ann. § 41-6-44.3 (current version at *id.* § 41-6a-515 (2010))).  Turner argues that the State's maintenance procedures are deficient in that (1) duplicate test samples are not obtained from each DUI suspect and (2) an external calibration is not performed every time a DUI suspect is tested.  Thus, we must determine whether, despite these challenges, the trial court properly admitted the evidence under rule 702.

¶21  First, we consider whether the principles and methods underlying Trooper's testimony "are reliable."  *See* Utah R. Evid. 702(b)(1).  The Utah Supreme Court recently determined that an expert's testimony was considered reliable, and the expert did not need to identify a particular methodology, where the expert testified as to his experience dealing with similar situations and his "expertise was unchallenged."  *Eskelson ex rel. Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶ 15, 242 P.3d 762.  Here,

Trooper testified regarding his experience maintaining Intoxilyzer machines for three years, including calibration to ensure accurate results. He indicated that he was personally involved in the discussions that led to the modification of the Utah Intoxilyzer procedures, and that his primary responsibility was to test the accuracy of Intoxilyzers. "Because [Trooper's] expertise was unchallenged, his specialized knowledge met the threshold showing of reliability required for the admission of his expert testimony." *See id.* (holding that a physician's testimony regarding his experience in dealing with situations similar to the plaintiff's constituted a threshold showing of reliability).

¶22    Second, we consider whether Trooper's testimony was based on "sufficient facts or data." *See* Utah R. Evid. 702(b)(2). Trooper based his testimony on the training he received from the manufacturer of the Intoxilyzer, his experience maintaining Intoxilyzer machines, and his knowledge of Utah's and other states' Intoxilyzer procedures. With this foundation, Trooper addressed the alleged deficiencies in the State's maintenance of the Intoxilyzer machines. With respect to the necessity of obtaining duplicate breath samples, Trooper explained that multiple tests are unnecessary because "the sample is continuously analyzed during the test" and that "[the Intoxilyzer is] sampling or testing that same [breath] sample several times a second as it's processing through." Trooper further testified that it would "be extremely difficult to contaminate a person's breath" and that even belching while blowing on an Intoxilyzer would not contaminate the results. He also related that although some states require two or more breath samples, other states, like Utah, require only a single breath test. Likewise, Trooper explained that some states, but not all, require that the officer in the field conduct a pretest calibration before each breath test. According to Trooper, while other states have a variety of requirements for calibration, Utah's requirement that Intoxilyzer machines be calibrated every forty days is within the range of the requirements imposed by other states, and "the majority of other states aren't as stringent as [Utah] on the results from the simulator solution." Because of Trooper's experience maintaining Intoxilyzers, his frequent testing of the machines to verify their calibration, and his knowledge of the procedures used in Utah and other states, his testimony satisfies the threshold showing that it was based on sufficient facts and data.

¶23    Third, we determine that Trooper's testimony meets the threshold that the scientific principles at issue were "reliably applied to the facts" of this case. *See* Utah R. Evid. 702(b)(3). In doing so, we note that Turner does not challenge this prong of the

rule 702 test on appeal. Furthermore, the testimony showed that the State had complied with the testing, calibration, and maintenance procedures supported by Trooper's testimony and certified it as working properly before and after Turner was tested.

¶24 Based on our review, we conclude that the trial court did not exceed its discretion by finding that the testimony of Trooper satisfied each of the requirements of rule 702. In making this determination, we do not decide that Trooper's testimony is correct or the most credible. Rather, Professor's contrary testimony goes to "'the weight of the evidence rather than its admissibility.'" *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶ 43, 269 P.3d 980 (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)). It is not the trial court's role to choose between two competing scientific positions, particularly where neither expert's qualifications were challenged. Rather, if each expert opinion satisfies rule 702, both should be admitted. Ultimately, the reliability of the Intoxilyzer results was a question for the trier of fact to decide. Therefore, the trial court's determination that Trooper's testimony met the threshold reliability requirements does not "exceed the limits of reasonability," *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794, and we will not disturb it.

## II. Turner Has Not Indicated How the Trial Court's Admission of the Intoxilyzer Evidence Violated His Due Process Rights.

¶25 Next, Turner contends that the admission of the Intoxilyzer results violated his due process rights under the Utah Constitution because the results were not obtained in a manner that would ensure their scientific accuracy and reliability.[4] *See* Utah Const. art. I, § 7 ("No person shall be deprived of life, liberty or property, without due process of law."). Turner relies on two Utah decisions in support of his position, *Layton City v.*

---

[4]Turner argues for the first time on appeal that he has a due process right to cross-examine the persons who selected the procedures set forth in administrative rule R714-500. Because Turner did not raise this argument in the trial court, it has not been preserved for appeal. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. Furthermore, the trial court did not rely on the presumption of admissibility provided in section 41-6a-515, instead reaching an independent conclusion that the Intoxilyzer results met a threshold level of reliability under rule 702. For both of these reasons, we do not consider this argument further.

*Peronek*, 803 P.2d 1294 (Utah Ct. App. 1990), and *State v. Ramirez*, 817 P.2d 774 (Utah 1991).

¶26     In *Peronek*, this court held that a disciplinary action based on an electronic breath analysis violated a prisoner's due process rights because

> [n]othing in the incident report itself or in [the testifying officer's] testimony supported any inference that the device used to administer the breath test was functioning properly, or that the person administering the test had the appropriate skills to operate the device and interpret the results, or that the record card appended to the incident report was an accurate reflection of the device's readings.[5]

*See* 803 P.2d at 1299.  Here, there is no dispute that the field officer administered Turner's test and that Trooper maintained the machine according to state procedures.

¶27     In *Ramirez*, the Utah Supreme Court discussed the due process implications of eyewitness identification evidence.  *See* 817 P.2d at 778-89.  In explaining that the trial court may not "abdicate its charge as gatekeeper to carefully scrutinize proffered evidence for constitutional defects and . . . simply admit the evidence, leaving all questions pertinent to its reliability to the jury," the supreme court relied on its decision in *State v. Rimmasch*, 775 P.2d 388 (Utah 1989), *superseded in part by rule as recognized in State v. Sheehan*, 2012 UT App 62, ¶ 20, 273 P.2d 417.  *See Ramirez*, 817 P.2d at 778-79.  In

---

[5]In *Layton City v. Peronek*, 803 P.2d 1294 (Utah Ct. App. 1990), the court cited *Triplett v. Schwendiman*, 754 P.2d 87, 88 (Utah Ct. App. 1988), for the contrary proposition that such evidence is admissible when the state provides evidence that the Breathalyzer was operating properly shortly before the defendant's test and the test was conducted according to department regulations.  *See Peronek*, 803 P.2d at 1300.  The *Triplett* court rejected the defendant's argument that the state procedures were inadequate because they did not include a requirement to test the machine both immediately before and after the defendant's test—commonly referred to as bookending—because of the "universal acceptance of the reliability of [Breathalyzer] evidence" and because when the state procedures are followed, bookending would be redundant, expensive, and unnecessary.  *See* 754 P.2d at 89.

turn, *Rimmasch* explains that the trial court performs its gatekeeper role when it properly examines evidence under rule 702. *See* 775 P.2d at 397-99. Here, the trial court considered the reliability of the Intoxilyzer results based on Trooper's testimony under rule 702 and, thus, did not abdicate its gatekeeper role.[6]

¶28 Here, Turner argues that the admission of Intoxilyzer results based on the presumption provided in section 41-6a-515 is unconstitutional. That case is not before us. The trial court did not rely on the statutory presumption, instead admitting the

---

[6]Turner cites several cases from other states in support of his interpretation of the Utah Constitution. While we are not bound by these decisions, we note that they are either distinguishable or supportive of the trial court's decision. *See Mack v. Cruikshank*, 2 P.3d 100, 106 (Ariz. Ct. App. 1999) (holding that the State violated the defendants' due process rights by using an admittedly unreliable breath testing machine); *Meehan v. Kansas Dep't of Revenue*, 959 P.2d 940, 946-47 (Kan. Ct. App. 1998) (collecting cases and holding that "[e]xpert testimony which only purports to show that there may be marginally more accurate tests than that mandated by the applicable statutes and regulations is not properly admissible in this type of administrative hearing [license revocation] either to prevent the admission of the test results at all, or to challenge the weight to be given them"); *State v. McElroy*, 568 So. 2d 1016, 1016-17 (La. 1990) (Dennis, J., concurring) (disagreeing with the majority opinion, *see* 553 So. 2d 456 (La. 1989), which approved in dicta, the admission of blood alcohol results and the pathologist's testimony notwithstanding the failure to comply with statutory procedures, so long as the state did not rely on the statutory presumption of admissibility); *State v. Honeyman*, 560 So. 2d 825, 829 (La. 1990) (holding that blood alcohol test results, where a statutory presumption did not apply, were properly admitted based on the testimony from the state's experts, despite the failure to comply with statutory procedures, because they complied with due process and fairness); *State v. Busby*, 2004-1231, pp. 4, 11 (La. App. 3 Cir. 2/2/05), 893 So. 2d 161, 163, 167 (explaining that blood alcohol tests are admissible despite a failure to comply with statutory procedures if the State otherwise proves that reliability satisfies due process, but holding that the State's failure to identify the person who drew the blood sample rendered the tests inadmissible); *State v. Garthe*, 678 A.2d 153, 157-59 (N.J. 1996) (holding that Breathalyzer results taken in compliance with statutory requirements met a "probability of trustworthiness" standard that allowed their admission, subject to the defendant's challenge to their reliability (internal quotation marks omitted)).

Intoxilyzer evidence based on its determination that Trooper's testimony provided it with a threshold level of reliability. Turner fails to explain how the admission of the evidence after a rule 702 analysis created "claimed deficiencies [that] are so serious as to constitute a violation of due process, i.e., the program is so deficient that it fails to 'comport with prevailing notions of fundamental fairness.'" *See Layton City v. Watson*, 733 P.2d 499, 500 (Utah 1987) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). While Turner provided evidence in support of his claim that the Intoxilyzer results are unreliable, he does not address how the introduction of the results based on Trooper's testimony, subject to his challenge, violates his due process rights or explain why this procedure is so deficient that it does not "comport with prevailing notions of fundamental fairness." *Id.* (internal quotation marks omitted).

¶29    "It is well established that a reviewing court will not address arguments that are not adequately briefed." *State v. Thomas*, 961 P.2d 299, 304 (Utah 1998); *see also* Utah R. App. P. 24(a)(9) (outlining the requirements for the argument section of an appellate brief). "An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 (internal quotation marks omitted). Turner's failure to address the fundamental fairness of permitting the finder of fact to resolve the conflict between the experts after the trial court determines its threshold reliability has shifted the "burden of research and argument to" this court. *See id.* Accordingly, his due process argument is inadequately briefed and we do not consider it.[7]

### III. We Need Not Reach the Issue of Whether Utah Code Section 41-6a-515 Unconstitutionally Shifts the Burden of Proof from the State to Turner.

¶30    Finally, Turner argues that Utah Code section 41-6a-515 unconstitutionally shifts the burden of proof from the State to Turner. Again, Turner ignores the fact that the trial court did not rely on the statutory presumption to admit the Intoxilyzer results. Consequently, we need not reach this issue. *See Citizens for Responsible Transp. v. Draper*

---

[7]Turner also argues that his federal due process rights were violated; however, his briefing on this issue is similarly inadequate, and we do not consider this argument. *See State v. Thomas*, 961 P.2d 299, 304 (Utah 1998); *see also* Utah R. App. P. 24(a)(9).

*City*, 2008 UT 43, ¶ 15, 190 P.3d 1245 ("[T]his court should avoid addressing constitutional issues unless required to do so." (internal quotation marks omitted)).


CONCLUSION

¶31    The trial court did not exceed its discretion in concluding that the State had established a threshold showing of reliability of the Intoxilyzer results under rule 702(b) of the Utah Rules of Evidence. Because the trial court did not rely on a statutory presumption of admissibility in admitting the test results, we do not reach Turner's constitutional challenges to Utah Code section 41-6a-515.

¶32    Affirmed.


_____
Carolyn B. McHugh,
Presiding Judge


-----


¶33    WE CONCUR:


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


_____
James Z. Davis, Judge